Good morning, Your Honors. Good morning. Matt Campbell from the Federal Defenders of Eastern Washington and Idaho on behalf of Mr. Manzo. The primary issue in this case is whether counsel provided ineffective assistance of counsel by failing to understand rudimentary concepts in the sentencing guidelines, by failing to properly advise Mr. Manzo about the likely outcomes of entering a plea, and failing to take any corrective measures for his ineffective assistance, including moving to withdraw the plea and compelling government counsel to live up to its obligations under the plea agreement. It's axiomatic that a defendant is entitled to effective assistance of counsel, and that would include sentencing. And here counsel failed Strickland's first prong, that being effective assistance, by not anticipating grouping. And it was clear from the outset that this was a grouping situation. U.S. Sentencing Guideline 3D1.2 states that related counts will be grouped. Paragraph D lists offenses which will necessarily be grouped. And that list includes 2D1.1 and 2D1.11, which were the two guidelines that were at issue in these two cases. Simply reading the guidelines would have informed counsel grouping. And it's undisputed, it was undisputed both in the sentencing memoranda submitted and at the sentencing hearing, that counsel did not anticipate grouping, and in fact anticipated exactly the opposite. Counsel, let me ask you a question. Yes. Assuming for sake of argument that we agreed with your premise that there's ineffective assistance of the defense counsel in not anticipating grouping or not moving to withdraw the plea after the court says there's going to be grouping, what's the remedy that you're seeking? Is it to vacate the sentence and the conviction on the plea? And it goes back to square one? The government can charge him with more and he can go to trial, is that right? I apologize for interrupting, but essentially, yes. I believe that the plea agreement itself is considered involuntary because of the inadequate information. If the plea agreement that he entered into was involuntary, then it never should have proceeded to sentencing. The plea should not have been taken because it was based on the terms of that plea agreement. And in essence, case 2042 would go back to square one. I would add as a corollary to that, I believe that because the plea agreement in case 2042 also required the waiver of the appeal in case 2071, the case that proceeded to trial, that Mr. Manzo, if the court accepts these arguments and vacates the plea agreement, that he would also be entitled to an appeal of the trial case, the appeal that he was denied. And our argument in that regard is that essentially substantially incorrect information about the consequences of pleading guilty as opposed to going to trial is what renders the plea involuntary. And one of the cases I've cited which I won't be able to pronounce is Aiea v. Sun at 800 F2D 861. And that discusses the concept of gross error in expected sentence if pled. And if that gross error occurs, it renders the plea involuntary. In this case, there are some citations that the government makes regarding cases in which this court and other courts have said that mere errors in computing guidelines. That's not the situation that we're dealing with here. And I look to the Aiea case, and in that case, counsel made gross errors of stating that there was no chance the defendant could get a life sentence. He might get probation. And we believe this case is similar. Here, Mr. Manzo believed in the advice of counsel that he was looking at a guideline range of approximately 131 to 168 months. In fact, the guideline range was 292 to 365 months, more than double. So we believe that this fits squarely within that Aiea case. And I think it's also important, again, if the court were to find deficient performance, to look at the prejudice angle. And I believe that the government is incorrect in the way it discusses prejudice. And I think the case law, particularly Aiea and the Moore v. Zerniak case, discuss that the real issue in prejudice is would the defendant, had he been given accurate information, have entered the plea of guilty? Well, the problem here is the sentence that he got, right? Certainly that's a direct result, but I believe that the problem is that he entered a plea that had he known what he was facing, he wouldn't have entered. Well, how does your argument with respect to the government breaching the plea agreement, does that reach the same thing in a different way? Your Honor, I guess the way I would view it, well, that is arguable. There are a lot of different ways to look at this case. There are. I would almost look at that in a sense as a secondary or corollary claim to the ineffective assistance, because in the sense that it appears from the record that the government didn't anticipate grouping either. And I take the government at its word on that point. But the government had stated in the plea agreement that the guideline calculations were, in essence, an adjusted offense level of 31. At the sentencing hearing, the government took the position, no, it was a 38, and we're requesting a guideline sentence based on that 38. And what we're arguing is that the government could certainly at sentencing have said, and there's this doctrine that comes up of honest answers to court questions, and we're certainly not saying the government should have lied, but the government could very well have said, we didn't anticipate this. While technically grouping does apply, we're requesting a sentence within the guideline range anticipated in the plea agreement. They could have said that. They could have lived up to essentially their obligations that the sentencing guidelines, that they would recommend the sentencing guidelines at least for that 130, I believe it's 135 to 168 range, that that was the sentencing guidelines that the parties had anticipated, that that would be an adequate sentencing guidelines under this standard. But the real issue, I believe, is that counsel, defense counsel, did nothing. Counsel didn't seek to enforce Mr. Manzo's rights by enforcing the plea agreement. Counsel didn't seek to withdraw the plea. Counsel didn't advise Mr. Manzo to withdraw the plea or even that he could. Counsel simply sat there and asked for a 10-year sentence based on some objections that were doomed to fail and based on, I believe it was a six-page sentencing memorandum. That was never going to happen. Counsel took absolutely no steps to undo the incorrect information that Mr. Manzo had been proceeding on all along. So I hope that answers the Court's question to some extent in that, yes, I believe that the government could have lived up to its obligation to some extent and didn't. And perhaps equally, if not more importantly, counsel did nothing to see if that could happen. What was the, okay, what's the prejudice if he had, what would have happened if counsel had done what you. Mr. Manzo would have, I believe the evidence is clear that Mr. Manzo would have withdrawn his plea. There was at this point no advantage to going through with the plea agreement. The plea agreement as executed at sentencing called for sentencing at a base offense level of 38. That's the exact same offense level if he had gone to trial and lost. He had already demonstrated that he was willing to go to trial. He had gone to trial in the other case. This plea and sentence, this plea was actually entered on the morning of trial. So the indications are he could have gone to trial. The result would have been no worse had he done so. The standard for withdrawing a plea agreement after sentencing is what? I'm not suggesting that he should have withdrawn after sentencing. What I'm suggesting is he could have withdrawn his plea prior to the sentencing hearing based on the ineffective assistance that he received. Because he hadn't been sentenced on the trial case yet. Sentencing was joint. When did his lawyer learn about the grouping? His lawyer learned about the grouping when the PSR was distributed to the parties. I couldn't tell you the exact date off the top of my head. After he pleaded guilty. Yes. Oh, yes. After he pleaded guilty he learned of the grouping. But after that he submitted his sentencing memoranda and he submitted a separate list of objections. There were many objections. And so I take it your position is that he should have moved to withdraw the plea because he had a fair and just reason because everybody thought they were going to be grouped. Correct. And he didn't do that. He thought they were not going to be grouped. Yes. He thought they were not going to be grouped. He knew they were not going to be grouped. And at that point there was no advantage to the plea agreement. I think that's also important. The government and I disagree on that point. And the government talks about how well the plea agreement called for the government to recommend concurrent sentencing. And while technically that's accurate, I think it's important to consider the rationale. Would the government do that? They were never going to do that because it had already been grouped. So essentially that would amount to double counting. The other fact the government cites is that they did recommend in 2042, the plea case, acceptance of responsibility. Well, technically they did recommend that in 2042, but the problem was that they recommended it for 2042, then said it was grouped, and then once it was grouped they said, well, no acceptance of responsibility at all because you went to trial in the first case. So although they recommended it, it was an illusory recommendation because they didn't really say the court should follow through. Unless there are any questions, I'd like to reserve my remaining time. I plead the court my name is Sean Anderson. I'm Assistant United States Attorney for the government. I represent the appellee of the United States. I believe the record also reflects that I was the trial attorney in this case for the government. Defendant's first issue that he brings up is, in effect, assistance of counsel based on the failure of his trial counsel to consider the grouping rules at the time of the plea agreement in 2042. That's that initial distribution case.  I plead that under Strickland, court would first have to consider did the defendant's counsel's performance fall below an objective standard of reasonableness, considering all those circumstances in this case. And what's clear is we have a plea agreement that only pertains to one cause number, 2042. The government and the defendant were not just on the eve of trial, they were on the day of trial, the morning of trial, when this plea agreement was entered. That's the only cause number but for the waiver of appeal that this plea agreement pertains to. It doesn't... But should counsel know, should the defense counsel know, and I realize anybody can miss something, but should a reasonably effective defense counsel know that there's going to be grouping? It's something to always consider the possibility of that, but yet at the same time, this particular case was simply negotiated based on the existing evidence that we had, in particular the quantity that pertained only to this case. I don't know what counsel actually thought at that time. What did you think? At this point, I was solely focused on this one case for trial that morning, that was going to trial. I had witnesses ready. We'd already tried the other case, hard-fought trial in 2007-2. The government had prevailed that case. In that case, we were ready to go to trial. To go to trial in this case, and there really wasn't much left for the government to offer. They were both complex cases. It wasn't clear where sentencing would go, and I believe all that's reflected in the nature of the plea agreement. It's a fairly open agreement. It strictly pertains to this particular cause number, 2042. It left open a number of variables. In particular, criminal history was wide open. The ability to request a downward departure or variance based on mitigating or aggravating factors. The parties could recommend basically any sentence that they wanted to. What did counsel gain for his client from entering into this plea agreement? Well, he probably didn't gain much, but he did gain the concession of the government to acceptance of responsibility. In the bigger picture of things, he locked the government in in 2042 to acceptance of responsibility, but he also had the ability in the other case to still argue for it in that case. That still was a wide open issue, even under the grouping rules. He still had the ability to argue and obtain acceptance of responsibility. He ultimately failed in doing that, but he still had that ability. If we accept appellant's theory, and we give him the relief of vacating, saying the plea wasn't validly entered, and he gets to vacate his conviction, start over and be retried on this, could he end up with a higher sentence than what he got while on the plea? I believe he could. In particular because the delivery case, the 2042, was really not fully litigated before Judge Nielsen at the trial level. There were additional circumstances in that case that I believe could warrant an even higher sentence just as to that delivery itself. And it's a potential sentence of up to life imprisonment. Is that his choice to make? Assuming that his lawyer was ineffective in entering the plea without understanding grouping, is it his choice to make whether he wants to take the risk of ending up in worse shape after being convicted? I believe it's the defendant's choice to do that, if that's what he wants to do. I believe that Judge Nielsen's decision should be affirmed instead. I don't believe there was any ineffectiveness since a counsel in here negotiating the resolution of this one case. So your position is that his lawyer is not ineffective by not recognizing grouping? And not moving to withdraw the plea after grouping is on the table? I don't believe he was ineffective under the circumstances in trying to resolve the case that was before the court that day. Understanding we had the other case as well, 2071 and then 2088, the supervised release matter. But to then take it off the table or to then try and withdraw the defendant's plea, the defendant could have very well been looking at a more substantial sentence. Had he done that, it would have gone to trial and more evidence would have been put before the district court. Okay, so he's not ineffective when he makes the first deal and then after the grouping comes up, your position is he's not ineffective by not telling his client to try to withdraw the plea and vacate the sentence because he might be worse off if he goes to trial? I believe he would have been worse off had he gone to trial. Certainly he did recognize that the grouping would occur once he received the pre-sentence investigation report. It was a substantially higher range of imprisonment. What is your understanding of what he wants now? I'm not sure. I understood it to be one specific performance on this agreement, but the terms of the agreement, I don't know how he would possibly get that. It was impossible for Mr. Monzo to have some sort of expectation that he faced 135 to 168 months in prison given all the open terms, all the open variables in that plea agreement that just didn't make any sense. We'll have to assume that perhaps he does want to simply withdraw his plea and go to trial on that cause, which is essentially what will happen. But... The government... Because just by vacating the sentence, he's not going to get much. No, we were on the morning of trial at one time with witnesses ready. We'd already gone through a fairly lengthy trial, well, fairly lengthy for the type of case, trial on the other cause, and we'd already exposed an informant to the world, and so at this point we had nothing to lose but to go to trial on the case. And in addressing the issue of... breach of the plea agreement by the government, I believe we did fulfill all the terms of that plea agreement. Again, given the nature of the agreement, the calculations were based simply on 2042 cause number. There was no agreement on aggravating factors. The criminal history category was open. The government was entitled to make an independent... Counsel, I should know the answer to this, but I've read too many briefs, I guess, so I'm forgetting. So just refresh my mind on it. Are we here on a direct appeal or on a habeas, federal habeas? We're on a federal habeas. So did he have evidence submitted on that of what his lawyer's thinking was once the grouping came up as to whether he should try to vacate the conviction and withdraw the plea? No, the record is absent in that regard. All we have is colloquies before the court, discussions before the district court of both the change of plea and sentencing, and then the sentencing memo itself, and I believe that's all we have. So there's no evidence in the record really of what the lawyer's strategy was? Direct evidence, I mean. No, Your Honor. Is there any precedent that tells us how we are supposed to deal with that when we don't have evidence of it? Well, the court has left with... We've got the presumptions trickling. The strong presumption. Right. So we have that. And is that strong enough to sustain the conviction and sentence? I believe so, based on the nature of the plea agreement itself. Okay. If the Court has any other questions. No further questions. Thank you. Thank you, Your Honor. Just to make it clear, because there was a question about... What is it you want? Do you want to go to trial? Essentially, what we're saying is that the 2042, the plea agreement should be voided, the sentence should be voided, the plea should be voided, the conviction should be voided, and we start at square one on 2042. And we believe that he should be entitled to an appeal on 2071, because that waiver was an explicit term of this plea agreement. But for this plea agreement, he would have had an appeal on his trial. Then what's your answer specifically to the argument that's advanced by the government that in assessing whether the lawyer was ineffective in not moving to vacate everything, once grouping came out, that he could have been worse off if he went to trial, and that we have the presumption of effect assistance, and you didn't submit any evidence of what the lawyer's thinking was, which I assume you could have done in that proceeding, right? If I had represented him in the district court, I suppose I could have. Yeah, right in the 2255. Correct. I did not. He was pro se at that time. I mean you personally, but his lawyer could have. Understood. I guess I would have two answers. The first is whether or not he may be worse off if a new trial is held, I think is irrelevant. The question is what did he know and what did he understand when he entered the plea? And this court's case law seems to make that clear. I don't think that we can sit here and second guess and say, well, out of benevolence, he'll be better off with this deal than he would if he went to trial. The point is he didn't get to make that decision. Well, doesn't it relate to whether his counsel is ineffective? Mr. Prejudice? Arguably it contributes, but it seems to me that the real issue is if Mr. Manzo was given materially incorrect information that induced the plea, I don't think it matters whether we think that he may do worse off at a new trial. He was told he was looking at a range, that the guideline range would be 135 to 168. It was more than double that. So if that's what induced him to plead, as counsel made it clear on the record, we anticipated the guideline range would be such and such. And that's what his counsel said, and that's undisputed. And that's not true. It simply isn't true, and a competent lawyer would have known that. I don't think it matters that looking at it now in 20-20 hindsight, the government or myself or your honors thinks that he may be worse off. I don't think that's the inquiry. As to what evidence we have on the record, we have a very clear record that counsel simply did not anticipate this, that counsel went ahead with, I would say, a very meager set of objections that were doomed to fail. They were simply preserving issues that no court has ever upheld. He filed a six-page sentencing memorandum. There's no indication on the record that he ever did anything, took the slightest step to either seek to enforce the plea agreement or withdraw it. He did nothing. And I think, while I understand your honors' comment about the evidence, I think that the evidence in the record is sufficient to at least warrant an evidentiary hearing, which Mr. Manzo did ask for below. And that was denied when the court, when the district court denied this. And I would also comment, the government is saying that it lived up to the terms. If the government, well, I disagree with that, but even if the court were to find that the government lived up to its terms, I think that that shows how worthless and illusory the plea agreement was because the government only lived up to its terms in the strictest of all possible senses. It couldn't get acceptance of responsibility as this case was handled. It was never looking at concurrence or consecutive sentencing. I'm only one judge on the panel, but given the nature of the plea agreement, I'm not really seeing a breach of it by what the government did. But all I'm seeing is your ineffective assistance claim as to whether your client went into the deal with his eyes open. Understood, Your Honor, and that's why I would fall back on the point. If the government lived up to the terms of its plea agreement, then that shows how worthless the plea agreement was because Mr. Manzo got nothing from this agreement. All right. Thank you. You've more than used your time. The case just argued is submitted. That concludes the calendar for today, and the court stands adjourned. All rise.
judges: Schroeder, Alarcon, Gould